Clayton RICHARDSON, III, Plaintiff,

v.

CLAYTON & LAMBERT MANUFACTURING COMPANY, Defendant,

v.

FABRICO MANUFACTURING COMPANY, Third Party Defendant,

v.

B.F. GOODRICH COMPANY, Fourth Party Defendant.

No. EC 84–03–GD–D.

United States District Court, N.D. Mississippi, E.D.

May 20, 1986.

John W. Crowell and Aubrey E. Nichols, Columbus, Miss., for plaintiff.

Tommie G. Williams, Greenwood, Miss., for defendant Clayton & Lambert Mfg. Co.

W. Wayne Drinkwater and Janet D. McMurtray, Greenville, Miss., for defendant Fabrico Mfg. Co.

L.F. Sams, Jr. and Thomas D. Murry, Tupelo, Miss., for defendant B.F. Goodrich Co.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

### FACTS

Presently before the court is the third party defendant's motion for summary judgment on the third party complaint of Clayton & Lambert Manufacturing Company. After due consideration of the voluminous memoranda and exhibits submitted in reference to this motion, the court is of the following opinion:

Clayton Richardson, III instituted the instant action against Clayton & Lambert Manufacturing Company for injuries he received in a swimming pool accident on July 22, 1980. Richardson sued Clayton & Lambert for negligence, breach of express and implied warranties, and for products liability in that the pool was in a defective condition unreasonably dangerous. Clayton & Lambert then filed a third party complaint against Fabrico Manufacturing Company for indemnity based on active-passive negli-

gence, breach of implied warranty and strict liability. It is alleged that the vinyl liner in the pool was the cause of the plaintiff's injuries. Clayton & Lambert claims that it was a mere conduit of this vinyl liner from Fabrico to the buyer of the swimming pool. The defendant claims that if it is held liable on the causes of action alleged against it by the plaintiff, it should be indemnified by Fabrico.

Fabrico in turn argues that it is in no way responsible for the injuries that the plaintiff incurred and that it should not be held liable in any indemnity action by the defendant. In its motion for summary judgment Fabrico claims that it cannot be held liable for indemnity because Illinois law applies to the instant action, and Illinois does not recognize a cause of action for active-passive indemnity by a defendant tort feasor. Fabrico also claims that Clayton and Lambert's claim for indemnity for breach of implied warranties is barred by the statute of limitations of the Uniform Commercial Code. As to Clayton & Lambert's claim for indemnity for strict liability, Fabrico claims that Clayton & Lambert did not plead this cause of action in its third-party complaint nor in the pretrial order and therefore cannot recover on this claim. Fabrico also asserts that Clayton & Lambert cannot recover indemnity because it was actively at fault in not discovering the defect if any, in the liner.

In its response to Fabrico's motion for summary judgment, Clayton & Lambert asserts that its indemnity claims against Fabrico are viable because Mississippi law applies to the claim for active-passive indemnity, not the law of Illinois, and because the applicable statute of limitations has not run on the indemnity claims for breach of implied warranties. As to the strict liability claim, Clayton & Lambert asserts that this claim was asserted in its pleadings and that it is entitled to indemnity from Fabrico, the manufacturer.

## LAW

In diversity actions based on causes of action that arise under state law, federal courts are required to apply the choice of law rules of the forum state. *Klaxon Co.*

*v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477, 1480–81 (1941); *Erie Railroad Co. v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938); *Wayne v. Tennessee Valley Authority,* 730 F.2d 392, 399 (5th Cir.1984), *cert. denied* —— U.S. ——, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985). As the instant action was brought in the federal district court for the Northern District of Mississippi, this court must apply the choice of law rules of the State of Mississippi.

Generally, Mississippi courts use the center of gravity test to determine whether Mississippi law or a foreign state's law will be applied. *Mitchell v. Kraft,* 211 So.2d 509 (Miss.1968); *see also White v. Malone Properties* (Miss.1986) No. 55,195, slip op. (March 12, 1986). In applying the Mississippi choice of law rules, the first step is to ascertain the nature of the issues involved. It is necessary to classify each issue as a problem in the law of torts, contracts, property or another area of the law. After this is done, the court must then determine what specific choice of law rules the State of Mississippi applies to issues arising in that legal area. *See Acme Circus Operating Co., Inc. v. Kuperstock,* 711 F.2d 1538, 1540 (11th Cir.1983).

In the instant action, the third party defendant alleges that the issues involved in the third party plaintiff's claims arise under the law of contracts. Accordingly, the third party defendant argues that provisions of the Restatement (Second) of Conflicts of Laws dealing with contracts should be applied in determining which state's laws will be used in resolving the issues that arise in the third-party action. Section 188 of the Restatement provides the factors to be considered in contract cases. These include:

(a) The place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Section 188 is generally used in cases where an issue exists concerning construction of a contract or breach of a contract. There is no Mississippi authority that this section should be used in determining which state's law on indemnity should be used.

In considering what law should be applied in the instant action for indemnity, the court is of the opinion that § 188 is inapplicable. *See Lamb v. McDonnell-Douglas Corp.*, 712 F.2d 466, 469 (11th Cir.1983), (court used tort principles of conflicts of law to determine which state's law to apply in action for indemnity); *Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821, 826 (6th Cir.1983) (tort principles of conflicts of law used in determining which state's law to apply in implied indemnity action); *Jones & Laughlin Steel v. Johns-Mansville Sales*, 453 F.Supp. 527, 539 (W.D.Penn.1978) *affirmed in part, reversed in part on other grounds*, 626 F.2d 280 (3rd Cir.1981) (contacts relating to the personal injury, not contacts relating to the contract were examined in determining which state's law to apply in indemnity action).

The claim for indemnity based on active-passive negligence sounds in tort, not contract. Similarly, a claim for indemnity based on implied warranties has tort characteristics. While the action for breach of warranty may be considered a "mixed bag" between the law of contracts and the law of torts, *Kellan v. Holster*, 518 F.Supp. 175, 179 (M.D.Fla.1981), the court is of the opinion that the action more closely resembles a tort action. An implied warranty is not literally a "contractual" warranty because it is not incorporated into the formal agreement of the parties and is not a basis of the bargain. *See* 1 R. Anderson, *Uniform Commercial Code* § 2–314:3 at 528 (2d ed. 1970). The implied warranty arises independent of the sales contract. Furthermore, an action for breach of implied warranty is based on concepts of duty created by the sale of a product, breach of duty, proximate causation and injury. Defenses that may be asserted include contributory negligence and assumption of the risk. Thus, analysis of an indemnity claim based on an implied warranty is more akin to the area of tort law than to contract law. The indemnity claim based on the theory of products liability has similar tort characteristics.

Since tort concepts dominate the causes of action from which the defendant's third-party action is derivative, the court is of the opinion that tort conflicts of laws considerations should be analyzed in determining whether to use Mississippi law or Illinois law.

Section 145 of the Restatement provides that in tort cases the parties' rights and liabilities are to be determined under the local law of the state that has the most significant relationship to the occurrence at issue and to the parties. Principles of § 6 of the Restatement are to be used as guidelines in determining which state has the most significant relationship. Section 6 provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

In applying the principles of § 6, contacts that are to be considered include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) Conflict of Laws, § 145(2).

In the instant case, the court finds the following contacts:

1) The injury upon which the indemnity claim is based occurred in Mississippi.

2) The conduct that allegedly caused the injury may have occurred in Mississippi, Kentucky, Illinois, Ohio or in a combination of these states. Clayton & Lambert asserts that Fabrico was responsible for the conduct causing the plaintiff's injuries. Fabrico's fabrication of the vinyl liner sold to Clayton & Lambert took place in Illinois. Fabrico alleges, however, that it was not guilty of any injury-causing conduct. In its answer to the third-party complaint, Fabrico alleges that any injury-causing conduct took place when the liner was installed or when it was used. The liner was installed and used in Mississippi. Fabrico also alleges in its fourth-party complaint that the conduct causing the injury may be attributable to B.F. Goodrich, the fourth-party defendant. The activity by B.F. Goodrich took place in Ohio. In its motion for summary judgment, Fabrico also alleges that Clayton & Lambert may have been negligent in failing to discover any defects in the liner. Any such negligence would have occurred in Kentucky or Mississippi. From the foregoing allegations, it appears that the place where the conduct causing the injury occurred cannot be determined at this stage of the proceedings. Consequently, this factor is not of great import in the court's analysis of the contacts.

3) Fabrico was incorporated in Illinois and has its principle place of business there. Clayton & Lambert was incorporated in Kentucky, and its principle place of business is in Kentucky. The plaintiff, who instituted the original cause of action upon which recovery, if any, in the indemnity action will be predicated, is a resident of Mississippi.

4) The relationship between the parties herein, as it relates to the instant action, appears to be centered in Mississippi. The purpose of the transaction between the defendant and third-party defendant was to provide necessary materials for a pool to be installed in Mississippi. The vinyl liner was shipped to Mississippi and was installed there. While negotiations between the defendant and third-party defendant may have taken place in Illinois and in Kentucky, the purpose and result of these negotiations was to install a swimming pool in Mississippi.

In balancing these contacts, it appears that Mississippi has the most significant relationship with the action and the parties.

This conclusion is further supported by consideration of the factors listed in § 6 of the Restatement. As there is no statutory directive in Mississippi concerning choice of law in indemnity actions, the court looks to other relevant factors. In the instant case it appears that no matter what law this court applies, it will not affect the needs of the interstate and international systems. In looking at the relevant policies and interests of the forum and other interested states, it is apparent that all concerned states have policies and interests that could be promoted by the application of their laws. Mississippi has an interest in having the laws applied because it is the forum state and because the cause of action upon which the claim for indemnity is based occurred in Mississippi.

Illinois has an interest in having its laws applied because Fabrico is incorporated there and fabrication of the vinyl liner allegedly took place in Illinois. Likewise, Kentucky has an interest in having its laws applied because Clayton & Lambert is incorporated there and has its principle place of business in Birchner, Kentucky.

In considering the relevant policies of each of these states, it appears that Mississippi recognizes a right to common-law indemnity as well as a right to indemnity for breach of implied warranty and for strict

liability. It also appears that Kentucky recognizes these indemnity rights. While Illinois apparently recognizes a right of action for indemnity based on breach of warranty and strict liability, Illinois law on common-law indemnity appears to be unsettled. Illinois courts of appeal have held that Illinois no longer recognizes a cause of action predicated on active-passive negligence. The Illinois Supreme Court has not ruled on this issue. If a cause of action for indemnity based on active-passive negligence no longer exists in Illinois, then that state would not have an interest in having its law applied to the common-law indemnity claim. Although Illinois does recognize a right to contribution among joint tort feasors, no claim has been made for such contribution pursuant to Illinois law.

The next factor the court must consider is the protection of justified expectations. The court is of the opinion that no evidence has been presented that the parties anticipated that any particular state's laws would be applied to a cause of action for indemnity by Clayton & Lambert against Fabrico based on a personal injury action. No actions were taken directly or indirectly in reliance on any state's laws.

Under the next factor, the court finds that the basic policy underlying the law of indemnity is that responsibility should be shifted so that one party will not be required to pay money that another should pay. This policy can be adequately served by applying Mississippi law on indemnity.

In considering the certainty of results, it appears that no interested state has well established law on each issue in this indemnity action. While Mississippi generally does have settled law on indemnity, several issues that may arise under the facts of the instant case have not been ruled upon by the Mississippi Supreme Court. For example, there is no Mississippi law on whether a defendant who was actively negligent may obtain strict liability indemnity from a third-party defendant who was also actively negligent. There also has been no Mississippi ruling on whether the explicit extension of time on warranties in a contract applies only to the express warranties or also to the implied warranties.

Illinois law also appears to be unsettled. The Illinois Supreme Court has not ruled on whether Illinois presently recognizes a common-law cause of action for implied indemnity. Also, the Illinois Supreme Court apparently has not ruled on whether an actively negligent defendant may obtain strict liability indemnity from another actively negligent party.

Fabrico asserts that the need for predictability and uniformity of results points to application of Illinois law. Fabrico alleges that Clayton & Lambert and Fabrico have a long-standing business relationship in which Fabrico manufactures vinyl liners and Clayton & Lambert sells them as components of swimming pools throughout the country. Since the vinyl liner could be shipped to any one of 50 states, Fabrico argues that the only way to promote uniformity and predictability of results is to apply Illinois law. Fabrico concludes that applying the law of the state where the vinyl liner is shipped would prevent both Fabrico and Clayton & Lambert from "systematically protecting [themselves] against unexpected liability." No evidence is provided to support this conclusion. Surely both parties may and do systematically obtain liability insurance on their products that are shipped out-of-state. Also, while Fabrico may have predicted that Illinois law would apply to any indemnity claim against it by Clayton & Lambert, it appears that Clayton & Lambert made no such prediction.

In considering the ease in determining and applying the law, it is clear that determination and application of Mississippi law would be much easier than determination and application of Illinois law. The court and the attorneys herein are located and licensed in Mississippi and are familiar with Mississippi law.

Based on the foregoing analysis of the factors in § 6 of the Restatement combined with the contacts in § 145, the court concludes that Mississippi is the center of gravity and that its laws will apply to the instant action.

## STATUTE OF LIMITATIONS ON IMPLIED WARRANTY CLAIM

■ Pursuant to Mississippi Code §§ 75-2-314 and 75-2-315, when a merchant sells a product, he extends certain implied warranties with that product to the customer. Fabrico states that if any such implied warranties were extended by it on the vinyl liner in the instant case, such warranties were made when the vinyl liner was shipped in July 1977. Fabrico further states that if any such implied warranties were breached, an action for the breach is now time-barred. Fabrico reasons that since Mississippi applies the law of the forum in procedural questions, the Mississippi statute of limitations on claims for implied warranty governs in the instant case. Although the court agrees that the Mississippi statute of limitations applies, the court has reached this conclusion by applying the center of gravity test. *See Mitchell v. Craft*, 211 So.2d 509 (Miss.1968) and *White v. Malone Properties* (Miss. 1968). No. 55,195, slip op. (March 12, 1986).

Mississippi Code § 75-2-725 (1972) governs the time period in which a personal injury suit founded on a breach of warranty claim may be brought. This section provides in pertinent part:

(1) An action for breach of any contract for sale must be commenced within six (6) years after the cause of action has accrued.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Under § 75-2-725(2), the statute of limitations for a breach of warranty claim begins to run from the date of tender of delivery, and not from the date of the personal injury. *Alexander v. Conveyors &*

*Dumpers, Inc.*, 731 F.2d 1221, 1227-28 (5th Cir.1984); *Ocean Springs Corp. v. Celotex Corp.*, 662 F.2d 353, 354 (5th Cir.1981); *Maly v. Magnavox Co.*, 460 F.Supp. 47, 48 (N.D.Miss.1978); *Rutland v. Swift Chemical Co.*, 351 So.2d 324, 325 (Miss.1977). Fabrico claims that since delivery of the pool liner occurred more than six years before the instant action was filed, the action for indemnity based on the breach of warranty is barred by the statute of limitations.

In response to Fabrico's assertion, Clayton & Lambert argues that the future performance exceptions embodied in Mississippi Code § 75-2-725(2) applies and that the statute of limitations on the breach of warranty action has not run. Clayton & Lambert argues that Fabrico explicitly extended its warranties to the future performance of the vinyl liner and that the discovery of the breach of this warranty did not occur until the accident. The action is alleged to have accrued at the time of such discovery. Under this theory, the plaintiff's claim for breach of warranty is not barred. The Fabrico extension of warranty provides:

THIS IS FABRICO'S SOLE WRITTEN WARRANTY. ANY AND ALL OTHER WARRANTIES WHICH MAY BE IMPLIED BY LAW, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY LIMITED TO THE DURATION OF THIS WRITTEN WARRANTY.

The duration of the written warranty was expressly provided to be 10 years. Clayton & Lambert argues that the above written warranty not only limited the implied warranty to a 10 year period, but also extended the time of implied warranty to a period of 10 years.

Fabrico argues that the future performance exception to the six-year statute of limitations applies only to express warranties. Fabrico cites several cases supporting this proposition. *See Stumler v. Ferry-Morse Seed Co.*, 644 F.2d 667 (7th Cir.

1981); *Holdridge v. Heyer-Schulte Corp.,* 440 F.Supp. 1088 (N.D.N.Y.1977); *Wright v. Cutler-Hammer, Inc.,* 358 So.2d 444 (Ala.1978). None of the cases cited by Fabrico, however, have involved a clause wherein the implied warranties were specifically mentioned. The cases cited by Fabrico hold that the future performance exception to the statute of limitations in § 75–2–725 does not apply to implied warranties. In reaching this conclusion, the courts reason that it is not logical that the Uniform Commercial Code drafters intended that an implied warranty be explicitly extended because the terms implied and explicit are anonyms. This court is of the opinion, however, that if a contract provides: "The implied warranties in this contract are extended to a period of ten years," then the implied warranty is expressly extended to future performance.

In *Rutland v. Swift Chemical Co.,* 351 So.2d 324 (Miss.1977), the Mississippi Supreme Court recognized that the future performance exception could apply to an implied warranty if the implied warranty had clearly related to future performance. *Id.* at 325. In Fabrico's warranty it is explicitly provided that the implied warranties are "LIMITED TO THE DURATION OF THIS [TEN YEAR] WRITTEN WARRANTY." The court must determine whether this language explicitly extends the warranty to future performance. The court is of the opinion that it does. The writing limiting the implied warranty to 10 years unambiguously expresses the intent that the warranty will run up to and including 10 years but no longer than 10 years. Since no ambiguity exists, the court must accept the plain meaning of the extension of warranty and give effect to the instrument as written. *See Freeman v. Continental Grain Co.,* 381 F.2d 459, 465 (5th Cir.1967); *Allen v. Powell,* 260 So.2d 182, 184 (Miss.1972); *Roberts v. Corum,* 236 Miss. 809, 112 So.2d 550, 554 (1959). Consequently, the future performance exception to the rule that the statute of limitations runs from the time of delivery is applicable. The court is of the opinion that the cause of action accrued at the time of discovery, and the breach of warranty action is not barred.

## IMPLIED INDEMNITY

In his complaint, Richardson asserts that the vinyl liner of the swimming pool was unreasonably dangerous because its coefficient of friction was too low. This defect allegedly caused Richardson's hands to slide apart when he hit the bottom of the pool, causing his head to be exposed. Richardson also alleges that the pebble design imprinted on the pool liner prevented him from properly estimating the depth of the water from a standing position on the side of the pool. As to each of these claims Clayton & Lambert alleges that it is not responsible for any defect in the pool liner and that it was a "mere conduit" of the liner from Fabrico to the pool owners. In its third party action against Fabrico for indemnity, Clayton & Lambert contends that any negligence on its part in selling the pool liner was passive and that Fabrico should be required to indemnify Clayton & Lambert based on Fabrico's active negligence.

In its motion for summary judgment, Fabrico contends that Clayton & Lambert cannot be held liable to Richardson under either principles of strict liability or negligence for selling a product with a latent defect. Fabrico therefore argues that it cannot be held liable to indemnify Clayton & Lambert. Fabrico further contends that if the vinyl liner contained a patent defect, Clayton & Lambert is actively negligent for selling such a product and that this active negligence bars it from receiving indemnity from Fabrico.

Mississippi courts have held that one who sells a product that has been manufactured by another cannot be held liable for negligence in failing to discover a latent defect in the product that causes injury to a third person. *See Early-Gary, Inc. v. Walters,* 294 So.2d 181, 187 (Miss.1974); *Shainberg*

*Company of Jackson v. Barlow,* 258 So.2d 242, 246 (Miss.1972). Accordingly, if it is found that the alleged defects in the pool liner were latent defects, Clayton & Lambert cannot be held liable for failure to discover these defects on either a negligence or strict liability theory. Since Clayton & Lambert cannot be held directly liable, Fabrico cannot be held liable to indemnify Clayton & Lambert.

If the alleged defects in the pool liner are found to be obvious defects, Fabrico asserts that Clayton & Lambert must be held liable based on an independent duty that it owed to the plaintiff to discover and remedy those defects. Fabrico asserts that any such failure to discover a patent defect constitutes active negligence and precludes common law indemnity. Fabrico cites two cases to support this proposition.

Fabrico states:

In *Alabama Great Southern Railroad Co. v. Allied Chemical Corp.,* 501 F.2d 94 (5th Cir.1974), a railroad company settled damage claims resulting from an accident caused by defective parts used in one of its trains, and sued the parts manufacturer for indemnity. The court refused to allow indemnity, stating that the railroad could have been liable to the claimants only if it had negligently failed to discover and remedy the defects, which constituted active negligence barring indemnity.

The court reads the *Alabama Great Southern Railroad* case differently. First, the defect that caused the accident in that case was a latent defect, not a patent one. The court held that a jury could have concluded that the railroad company was either actively negligent for lack of reasonable care in operating the railroad or that the railroad was guilty of no negligence because it had no duty to discover a latent defect. This court does not find any statement by the *Alabama Great Southern Railroad* court that the railroad could have been liable "only if it had negligently failed to discover and remedy the defects, which constituted active negligence barring indemnity."

Fabrico next claims that in *Home Insurance Company of New York v. Atlas Tank Manufacturing Co.,* 230 So.2d 549 (Miss.1970), the Mississippi Supreme Court held that a defendant who fails to remedy a condition that the defendant knows or should know is dangerous is actively at fault, precluding indemnity against a third party who created the danger. The court's reading of the *Atlas Tank* case indicates that the determination of whether a party is actively or passively negligent is a question of fact and depends upon the facts of each case. Based on the facts that the power company in *Atlas Tank* had safety regulations requiring its lines to be at a certain height, that the power company had failed to inspect its lines and realize that the lines were dangerously low, and that in fact the power company had knowledge of the danger indicated that the power company was actively negligent.

Any such factual question of whether Clayton & Lambert was actively or passively negligent may not be decided on summary judgment. Since it cannot be determined at this juncture whether Clayton & Lambert was actively or passively negligent, there are material issues of fact and Fabrico is not entitled to judgment as a matter of law on the implied indemnity and strict liability indemnity claims.

Accordingly, it is Ordered that the third party defendant's motion for summary judgment be and is hereby denied.